Appeal by the defendant from a judgment of the County Court, Nassau County (Spergel, J.), rendered September 13, 2013, convicting him of operating a motor vehicle while under the influence of alcohol in violation of Vehicle and Traffic Law § 1192 (3), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing before the Supreme Court, Nassau County (Ayres, J.), of that branch of the defendant’s motion which was to suppress evidence of his refusal to submit to a chemical breath test, and the granting of the People’s separate motion to admit the results of a prior portable breath test into evidence.
Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and a new trial is ordered.
In the early morning hours of March 25, 2012, the defendant was involved in a motor vehicle accident in which he struck the rear end of another vehicle on a public highway. A New York State Trooper who responded to the scene observed that the defendant exhibited signs of intoxication, and administered several field sobriety tests, including a horizontal-gaze nystagmus test, a walk-and-turn test, and a one-legged foot-elevation test. Based on the defendant’s performance, the trooper concluded that he failed all three tests. Thereafter, the trooper administered a portable breath test (hereinafter PBT) to the defendant. The trooper verbally instructed the defendant how to perform the PBT, and also physically demonstrated how to take the test. The defendant put his lips on the mouthpiece and exhaled until he was told to stop. The PBT showed a positive blood alcohol concentration, after which the trooper informed the defendant of that positive result. The trooper did not write down the result of the PBT, and he testified at the suppression hearing that it was not his general *1073 practice to memorialize PBT results in writing. The trooper concluded that the defendant was intoxicated, and placed him under arrest. After the defendant was read a statement setting forth the consequences of any refusal by him to submit to further testing, as well as Miranda warnings (see Miranda v Arizona, 384 US 436 [1966]), the defendant agreed to submit to a chemical breath test for the purpose of determining the alcohol content of his blood.
Thereafter, the trooper transported the defendant to the nearest New York State Police barracks, and prepared a device known as a Draeger instrument to administer the chemical breath test. The trooper instructed the defendant to blow into the mouthpiece until he was told to stop. According to the trooper, the defendant exhaled with a short breath, and stopped before being told to stop. The trooper removed the mouthpiece, replaced it with a new one, and had the defendant try again. Once again, the defendant did not provide a full breath sample. Thereafter, the trooper allowed the defendant three more opportunities to provide an adequate breath sample. However, each time the defendant only exhaled with a short breath. After the fifth attempt, the defendant told the trooper that he could not blow any longer, and the trooper deemed the defendant’s behavior to be a refusal to submit to the test.
Prior to the start of trial, the People moved in limine to allow testimony about the administration and results of the PBT. The People argued that such testimony went to the defendant’s state of mind and consciousness of guilt when he was administered the Draeger chemical breath test at the State Police barracks, inasmuch as he was able to provide a proper breath sample for the PBT. The defense objected, and argued that the evidence of the results of the PBT was inadmissible because the test was not reliable and the results were prejudicial. Subsequently, the Supreme Court issued a written decision explaining that it would allow those results into evidence if the People could show the reliability of the PBT device by confirming that it was on the conforming list approved by the Commissioner of the New York State Department of Health (hereinafter the Commissioner), that the test was properly administered, that the test was administered by a properly qualified administrator, and that the defendant had knowledge that the test results showed a presence of alcohol.
During the trial, which was conducted by the County Court, that court took judicial notice of the fact that the PBT device was on the Conforming Products List of Evidential Breath Alcohol Measurement Devices (hereinafter the conforming list) *1074 compiled and approved by the Commissioner (see e.g. People v Boscic, 15 NY3d 494, 499-500 n [2010]). The trooper testified that he received training with respect to the administration of the PBT and the operation of the PBT device, that the PBT device appeared to be in working order, and that the defendant was able to blow into the device as instructed until the trooper told him to stop. The trooper also testified that the PBT results indicated the presence of alcohol, and that he informed the defendant of this. The court did not give a limiting instruction at that time but, rather, with the consent of counsel for both the People and the defendant, gave a limiting instruction during the jury charge. In sum and substance, the court instructed the jury that the testimony relating to the PBT was introduced by the People solely to demonstrate the state of mind of the defendant in connection with any subsequent conduct, and that the jury could not rely on the results of the PBT in determining whether the defendant was intoxicated.
On appeal, the defendant contends that he was deprived of his right to a fair trial based on the County Court’s admission of the PBT results into evidence. We agree. Under the circumstances of this case, the probative value of the PBT evidence was outweighed by its prejudicial effect and, accordingly, should have been excluded (see People v Caban, 14 NY3d 369, 374-375 [2010]; People v Scarola, 71 NY2d 769, 777 [1988]; cf. People v MacDonald, 227 AD2d 672, 674 [1996]).
Generally, the result of a PBT “is not admissible to establish intoxication, as its reliability for this purpose is not generally accepted in the scientific community” (People v Kulk, 103 AD3d 1038, 1040 [2013]; see People v Thomas, 70 NY2d 823, 825 [1987], affg 121 AD2d 73 [1986]; see also People v Schook, 16 Misc 3d 1113[A], 2007 NY Slip Op 51411 [U] [Suffolk Dist Ct 2007]). Here, although the PBT evidence was not introduced for the purpose of proving intoxication, since the jurors were permitted to hear that the PBT detected the presence of alcohol, the County Court created an unacceptable risk that the jurors would improperly consider the PBT evidence for this impermissible purpose. This risk was enhanced both by the County Court’s determination to take judicial notice that the PBT was on the Commissioner’s conforming list and the State Trooper’s trial testimony that he was trained in the operation of the PBT device. The trooper’s testimony in this regard, which was directed towards the issue of whether the PBT was reliable for its intended purpose — the assessment of the defendant’s level of intoxication — was irrelevant to the defendant’s state of mind at the time he submitted to the chemical breath *1075 test at the State Police barracks. Thus, this testimony increased the risk that the jury would be unable to avoid considering the PBT evidence as proof of the defendant’s intoxication.
Moreover, the risk that the jurors would consider the PBT results as evidence of intoxication was further magnified by the fact that the jurors were not given a limiting instruction at the time the PBT evidence was presented but, instead, only at the end of the trial. While limiting instructions can, in certain instances, function to alleviate the potentially prejudicial impact of evidence, under the particular circumstances of this case, the prejudicial impact of the PBT evidence was substantial and, contrary to the conclusion reached by our dissenting colleagues, this prejudice was not alleviated by the contents or timing of the limiting instruction given by the County Court (see People v Clarke, 90 AD3d 777, 777 [2011]; People v Allen, 85 AD3d 1042, 1043 [2011]).
The exclusion of the PBT evidence was further warranted since the limited testimony of the trooper did not establish the reliability of the PBT, nor did it explain the potential differences, if any, in the duration and volume of breath needed to be exhaled by the defendant when submitting to the PBT, as opposed to the chemical breath test administered at the State Police barracks that employed the Draeger testing device. There was no testimony whatsoever regarding when the PBT device was last calibrated and, as such, no way of knowing whether the device was indeed functioning properly or whether its results were reliable (see People v Boscic, 15 NY3d at 500). There was no testimony by the trooper or any other witness as to whether the duration and volume of breath needed to be exhaled by the defendant when blowing into the PBT device was more than, less than, or the same as the amount needed when submitting to the chemical breath test. As such, the jury was improperly invited to speculate that the duration and volume of breath needed to be exhaled by the defendant when blowing into both devices was the same and, therefore, that the defendant intended to provide an inadequate sample when he submitted to the chemical breath test (cf. Vazquez v Costco Cos., Inc., 17 AD3d 350, 352 [2005]).
While the People argue that the reliability of the PBT is irrelevant because the evidence was not introduced for the purpose of proving the defendant’s intoxication, one cannot ignore that when a lay juror is presented with evidence of this nature, i.e., an instrument able to detect the presence of alcohol, there is a strong likelihood that its result will be given *1076 substantial weight, particularly in light of the lack of testimony comparing the duration and volume of breath needed to be exhaled so that both the PBT device and the Draeger chemical breath test device could properly and accurately measure blood alcohol content. As such, the prejudicial effect upon the jurors from hearing that the PBT detected the presence of alcohol substantially outweighed any probative value that this evidence might have had with respect to the defendant’s state of mind at the time that he submitted to the chemical breath test at the State Police barracks.
Moreover, we find that the evidence of the administration and results of the PBT test was unnecessary given the totality of the circumstances. The trooper testified that the defendant failed all other field sobriety tests administered to him, and that, when he was brought to the State Police barracks, he made five unsuccessful attempts to take the chemical test, each time failing to follow the trooper’s instructions. This provided the People with sufficient evidence to support their argument that the defendant evinced a consciousness of guilt without the need of introducing the PBT evidence.
The introduction of the PBT evidence was so prejudicial that it deprived the defendant of his constitutionally guaranteed right to a fair trial (see People v Henriquez, 3 NY3d 210, 210 [2004]; cf. People v Kulk, 103 AD3d at 1040).
Accordingly, a new trial must be ordered.
We need not address the defendant’s remaining contentions, which have been rendered academic by our determination. Hinds-Radix, Maltese and LaSalle, JJ., concur.